UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRYAN M. COOLEY**                                              **CIVIL ACTION**

**VERSUS**                                                       **NUMBER: 21-840**

**SOCIAL SECURITY ADMINISTRATION**                               **SECTION: "T"(5)**

## REPORT AND RECOMMENDATION

Plaintiff Bryan M. Cooley filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and the issues are ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

### I.     BACKGROUND

Plaintiff filed his application for DIB on September 10, 2019, alleging a disability onset date of May 11, 2016. (Adm. Rec. at 166-67). Plaintiff alleged disability due to a back injury, arthritis in his back, a bulging disc in his back, nerve pain from the bulging disc, gastric issues, high blood pressure, morbid obesity, chronic pain, and depression. (*Id.* at 67). Plaintiff, born on November 2, 1963, was 52 years old on the date on which he alleged disability and 55 years old when he filed his application. (*Id.* at 66). Plaintiff has a high-school education, (*id.* at 196), and he has past work experience as a warehouse supervisor and worker. (*Id.* at 197).

Defendant initially denied Plaintiff's application on October 22, 2019.  (*Id.* at 97-100).  Plaintiff sought an administrative hearing, which Defendant held on August 24, 2020.  (*Id.* at 37-68).  Plaintiff and a vocational expert ("VE"), Crystal D. Younger, testified at the hearing.

On September 11, 2020, the ALJ issued a decision, in which he concluded that Plaintiff is not disabled.  (*Id*. at 11-27).  In that decision, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine; degenerative disc disease; obesity; gastric issues, including chronic gastroesophageal reflux disease; and status post-gall bladder surgery.  (*Id.* at 14).  The ALJ ultimately held, however, that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations.  (*Id.* at 16).  The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except occasionally climbing, ladders, ropes, or scaffolds.  (*Id.* at 17).  Ultimately, the ALJ concluded that Plaintiff can perform his past relevant work as a warehouse manager. (*Id.* at 26).   The ALJ thus denied Plaintiff DIB.  (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled. On March 1, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision.  (*Id.* at 1-7).  Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496

(5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. Notably, the Commissioner is entitled to make any finding supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

### III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering claimant's age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must

4

> not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

5

IV.     **ISSUES ON APPEAL**

There are three issues on appeal:

(1)     Whether the ALJ properly denied Plaintiff's application at Step 4 on an "as generally" basis.

(2)     Whether substantial evidence supports the ALJ's RFC finding and the dispositive hypothetical question.

(3)     Whether the ALJ had the constitutional authority to render a decision on Plaintiff's DIB application.

V.      **ANALYSIS**

1.      **Whether the ALJ properly denied Plaintiff's application at Step 4 on an "as generally" basis.**

Plaintiff contends that under SSA policy, and the Program Operations Manual System ("POMS") in particular, there are only two possible types of denial at Step 4. First, he maintains that a claimant may be denied at Step 4 due to the ability to perform PRW as he had actually performed that work (an "as actually" determination). *See* Social Security Regulation ("SSR") 82-61, 1982 WL 31387, at *1 (1982); *see also* SSR 82-62, 1982 WL 31386, at *3 (1982); POMS DI 25005.050(B)(2); POMS DI 25005.020.

Second, Plaintiff contends that a claimant may be denied at Step 4 due to the ability to perform past relevant work ("PRW") as it is generally performed in the national economy (an "as generally" determination). SSR 82-61, 1982 WL 31387, at *2; *see also* SSR 82-62, 1982 WL 31386, at *3; POMS DI 25005.050(B)(2); POMS DI 25005.025. Plaintiff notes that the ALJ here denied DIB on an "as generally" basis. (Adm. Rec. at 26). The ALJ made no alternative finding under Step 5. (*Id.* at 26-27). Plaintiff argues that the ALJ's "as generally"

6

step 4 denial was flawed as a matter of law because Plaintiff's PRW at the warehouse was, in fact, a composite job.

"Composite jobs," are jobs that require the performance of significant elements of two or more jobs, and such composite jobs "have no counterpart in the [Dictionary of Occupational Titles] DOT." SSR 82-61, 1982 WL 31387, at * 2. Plaintiff contends that POMS DI 25005.020(B) provides that because composite jobs have no counterpart in the DOT, ALJs must not evaluate such jobs "at the part of the Step 4 considering work 'as generally performed in the national economy.'"

In *Henderson v. Saul*, the claimant had varied job tasks that fell under multiple DOT codes, and there was no need to resolve whether her PRW was a "composite job," as the claimant could perform her past relevant work based on her recent performance of it and her failure to allege otherwise. *See* Civ. A. No. 20-2045, 2021 WL 3508495, at *5, 8 (E.D. La. July 13, 2021). As discussed below, Plaintiff has failed to specify a nexus between his alleged mental health limitations and his inability to work, and, moreover, his proffered explanations for leaving the workforce were inconsistent. (Adm. Rec. at 42, 55, 225, 233, 265). The Court finds that it is immaterial whether Plaintiff's job was composite or whether the ALJ made any such determination, because, as in *Henderson*, Plaintiff does not allege the inability to do his PRW. (Rec. doc. 12 at pp. 6-10). Accordingly, whether Plaintiff's job was composite or not is unnecessary for this Court to consider.

Moreover, even were the Court to consider the warehouse manager job as composite, *Henderson* explained that because significant elements of composite jobs appear in multiple DOT codes, an ALJ may properly use VE testimony to ascertain whether a claimant can

7

perform PRW, either "as actually" or "generally" performed. 2021 WL 3508495 at *8 (E.D. La. July 13, 2021) (citing *Semien v. Colvin*, No. 12–02179, 2013 WL 3778984l, at *6 (W.D. La. July 17, 2013)). Indeed, the regulations are clear that an ALJ may rely on unimpeached expert testimony. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b). There is no legal support for the notion that an ALJ is obliged to consider this particular past relevant work a composite job, or that the record should be disregarded to award benefits to a claimant who can actually perform PRW. The Court finds that Plaintiff's argument is a red herring and lacks merit.

      **2.    Whether substantial evidence supports the ALJ's RFC finding and the dispositive hypothetical question.**

Plaintiff also argues that the ALJ failed to account for Plaintiff's mental functional limitations in his RFC determination and in the hypothetical question posed to the VE at the hearing. Here, Plaintiff notes that the ALJ completed a psychiatric review technique ("PRT") analysis and found that Plaintiff had mild mental functional limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. (Adm Rec. at 15-16). Plaintiff also maintains that under SSA policy, an ALJ must account for the functional limitations caused by even non-severe impairments when determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1523, 404.1545(a)(2) (requiring adjudicators to consider the functional effects of even non-severe impairments when formulating the RFC finding); SSR 96-8p, 1996 WL 374184, *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Because the ALJ allegedly did not do so, Plaintiff contends that his RFC finding was error.

8

Having reviewed the record, the Court finds that substantial evidence supports the ALJ's RFC assessment. The ALJ considered the record as a whole to reach his RFC determination that Plaintiff can perform light work, with only occasional climbing of ladders, ropes, or scaffolds. (Adm. Rec. at 17). The ALJ followed the regulatory roadmap in his assessment of Plaintiff's mental limitations, 20 C.F.R. § 404.1520c, 20 C.F.R., Part 404, Subpart P, Appendix 1, ¶ B, to determine the persuasiveness of the medical and other evidence, which revealed mental limitations so mild that they had no place in his RFC determination. (Adm. Rec. at 17-26); *see also* 20 C.F.R. § 404.1545(a)(2).

The record reveals that Plaintiff's mental health issues were consistently mild to nonexistent, and the consultative examiner found his symptoms "mild" in all four broad functional areas. (Adm. Rec. at 15-16). And while Plaintiff argues that the RFC was defective because it did not incorporate functional limitations based on his mental limitations, he fails to specify any such putative functional limitations based on his mental status. Indeed, Plaintiff does not point to any aspect of his PRW that he cannot perform due to any alleged mental limitation.

The ALJ considered Plaintiff's impairments shown by medically acceptable clinical or laboratory diagnostic techniques and, for any symptoms not so substantiated by objective medical evidence, whether any other evidence demonstrated that his symptoms limited his ability to do work related activities. (*Id.* at 17-26), 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996). As the ALJ noted on numerous occasions, Plaintiff declined mental health treatment, including counseling and prescription options. (Adm. Rec. at 25, 315-21, 364-66, 404-06, 420-37, 484-86, 2001-11, 2022-30, 2595, 2806-

9

07). The ALJ noted that the consultative examinations revealed only mild to no limitations in all mental functional categories, *i.e.*, the ability to understand, to remember, or to apply information; the ability to interact with others; to concentrate, to persist, or to maintain pace; and to adapt or manage oneself. (*Id.* at 15-16, 25, 70-73). His global functioning was only minimally impacted by such limitations and, by February 2020, his mental status was normal. (*Id.* at 69-71, 82-86). Plaintiff's medical record reveals, at most, mild mental limitations, and there is no valid argument that substantial evidence was absent.

The ALJ also concluded that Plaintiff's alleged mental concerns had no bearing on his daily activities. All three function reports alleged physical pain – not mental issues. (*Id.* at 219-34, 259-65). Despite alleged mental issues, Plaintiff drove, managed his dog, managed his finances and shopping decisions, used a computer and phone daily, visited church and restaurants unaccompanied, and handled stress and changes in routine "OK." (*Id.* at 51, 219-225, 259, 262-265). Indeed, Plaintiff initially told the judge that he quit work only because of physical pain, and in later questioning by his attorney, Plaintiff alleged that he quit work due to general forgetfulness, without professing mental health issues, treatment, or medication. (*Id.* at 42, 55). The ALJ considered all such testimony and ascertained that alleged forgetfulness had not been medically documented in the record. (*Id.* at 15-16, 19-26). Ultimately, Plaintiff's mental health limitations were so mild that they had no bearing on his RFC. (*Id.* at 14-26).

Plaintiff fails to explain to this Court why, if his mental health presented limitations, he failed to pursue mental health care and procure documentation for the record, which is devoid of any counseling or psychiatric services; medication for mental health;

10

hospitalization; or incidents about mental health. It is well-settled law that the claimant has the burden of proving disability by establishing a physical or mental impairment lasting at least twelve months that prevents engagement in any substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). It is also well settled that subjective complaints must be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Plaintiff's testimony failed to support any mental health concerns. Plaintiff therefore produced insufficient evidence under 20 C.F.R. §§ 404.1502, 404.1512, 404.1513, & 404.1518.

The record does not support that Plaintiff had mental limitations and the ALJ properly concluded that he can indeed perform light work, with the above-referenced climbing limitations, and he can resume warehouse management. (Adm. Rec. at 17-26). The Court finds that the ALJ properly assessed the record as a whole to reach his determination, at Step 4, that Plaintiff can perform his PRW as a warehouse manager. (*Id.* at 26); *see* 20 C.F.R. § 404.1565; SSR 82-61, 1982 WL 31387; SSR 82-62, 1982 WL 31386. The Court finds that the substantial evidence standard is satisfied.

Plaintiff argues that the ALJ's conclusion that he can do his past relevant work is error, yet he fails to specify what mental aspect of warehouse management that he cannot do. His alleged mental impairments posed no functional limitations as the ALJ concluded. *See* 20 C.F.R. § 404.1520a. The bulk of Plaintiff's argument is that any mild limitation in the four broad functional areas must result in the functional limitations reflected in the RFC, which would keep him from him from performing his PRW. However, scoring only "mild" in all four

11

mental limitation categories does not weigh in Plaintiff's favor. *See* 20 C.F.R. § 404.1520a(d)(1).

Plaintiff misconstrues the DOT's description of a warehouse manager job as socially intensive. Plaintiff's description has no basis in the DOT. The DOT warehouse manager code of "six" specifies "significant" speaking and signaling with people that entails only:

> Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants.

*See* DOT No. 184.167-114, 1991 WL 671234; *see also* DOT, Appendix B: Explanation of Data, People, and Things. Plaintiff does not allege the inability to perform such tasks and the record shows he can communicate by computer and phone daily, frequent church and restaurants unaccompanied, and supervise sometimes over thirty workers. (Adm. Rec. at 51, 212, 219-225, 236, 259, 262-265).

Plaintiff also contends that the ALJ's hypothetical questions to the VE should have included more about Plaintiff's mental limitations. However, the VE was present for the entirety of Plaintiff's testimony at the hearing and she opined at the end of the hearing that a person such as Plaintiff can perform light warehouse manager work. (*Id.* at 11, 26, 59-60). Moreover, the ALJ's hypothetical question needed only incorporate the limitations that the ALJ found supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). And the Court finds that Plaintiff's attorney failed to explore the alleged mental limitations with the VE. (*Id.* at 60-62). The Fifth Circuit has held that a claimant may not raise a perceived issue or conflict that was not "deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *see also Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2006) ("We have held that where the claimant

offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis."). It is well established, including in a recent case involving Plaintiff's current attorney, that a claimant who fails to develop issues in the administrative hearing cannot raise them on appeal. *See Henderson*, 2021 WL 08495 at *10. As such, the VE's testimony supports the ALJ's decision because matters abandoned during questioning are waived at the hearing. Plaintiff's argument is unconvincing.

### 3. Whether the ALJ had the constitutional authority to render a decision on Plaintiff's DIB application.

Plaintiff contends that the SSA's decision denying his disability benefits claim was constitutionally defective because the SSA provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without good cause. *See* Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."). But the Court finds that this conclusion does not support reversing an unfavorable SSA disability benefits determination. As the Supreme Court explained in *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), even when an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm. The Court finds that Plaintiff cannot do so in this case.

In *Collins*, the Supreme Court reviewed a challenge similar to Plaintiff's, which alleged that the leadership structure of the Federal Housing Finance Agency was unconstitutional

13

because its sole director was removable by the President only for cause. *Id.* at 1770. Though the Supreme Court concluded that the removal provision was unconstitutional, the Court finds that its discussion of the availability of relief disposes of Plaintiff's constitutional claim here. The Supreme Court explained that even when an unconstitutional statutory removal restriction is present, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *Id.* at 1789; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions.").

In *Collins*, as in this case, the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment[.]" 141 S. Ct. at 1787. The Court emphasized that "the unlawfulness of [a] removal provision" – the alleged constitutional defect both in *Collins* and argued by Plaintiff here – "does not strip [an official] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n.23. "As a result," the Court held, "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id.* at 1787. As Justice Thomas further extrapolated, "identifying some conflict between the Constitution and a statute is not enough. [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful." *Id.* at 1790 (Thomas, J., concurring). Without any showing that Section 902(a)(3)'s removal restriction "inflict[ed] compensable harm" on him, *Collins*, 141 S. Ct. at 1789, Plaintiff cannot obtain a rehearing on his disability determination on separation-of-powers grounds.

Under *Collins*, the absence of any nexus between the purported harm and challenged removal restrictions "defeats the . . . argument for setting aside" agency action. *See id.* at 1787. When, as in this lawsuit, the underlying basis for a separation-of-powers challenge to a removal restriction is an action taken by an acting official who was removable at will, no such nexus can arguably exist. *Id.* at 1782.

The ALJ who adjudicated Plaintiff's claim on September 11, 2020 held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Nancy Berryhill, who had been designated to serve as Acting Commissioner in April 2018 on former President Trump's nomination of Andrew Saul to serve as Commissioner. In her Acting capacity, she enjoyed no statutory tenure protection. *See* 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away."); *see also United States v. Eaton*, 169 U.S. 331, 343 (1898) (holding that when a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official"); *accord Collins*, 141 S. Ct. at 1782 (finding the FHFA Acting Director removable at will because relevant "subsection does not include any removal restriction. Nor does it cross-reference the earlier restriction on the removal of a confirmed Director.").[1] Thus, Berryhill

---

[1] The SSA describes the "Commissioner of Social Security" as an individual "appointed by the President" and confirmed by the Senate. 42 U.S.C. § 902(a). The Commissioner is appointed to a term of six years, and "[a]n individual serving in the office of Commissioner may be removed from office" only for cause. 42 U.S.C. §902(a)(3). In a separate subsection, the statute addresses the "Deputy Commissioner of Social Security," who enjoys no removal protection, and is deemed the "Acting Commissioner" during the "absence or disability of the Commissioner . . . unless the President designates another officer of the Government as Acting Commissioner." 42 U.S.C. § 902(b)(2), (4). In the absence of plain statutory text providing tenure to an Acting Commissioner – which would be "a singular anomaly in all of administrative law," *Rop v. Fed. Hous. Fin. Agency*,

15

was removable at will, and her ratification of the deciding ALJ's appointment accordingly severed any conceivable nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and any alleged harm to Plaintiff.

The Court finds no nexus between Section 902(a)(3) and Plaintiff's alleged harm and finds that Plaintiff cannot receive an SSA rehearing on his benefits claim. *Collins*, 141 S. Ct. at 1787; *see also Decker*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.").[2]

## VI. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Rec. doc. 15) be **DENIED**, Defendant's Cross-Motion for Summary Judgment (Rec. doc. 16) be **GRANTED**, and Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

### NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

---

485 F. Supp. 3d 900, 938 (W.D. Mich. 2020) – a person serving temporarily in an Acting capacity is removable at will. *See Collins*, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'"); *accord Swan v. Clinton*, 100 F.3d 973, 987 (D.C. Cir. 1996) (holding that removal protection did not apply to "holdover" officials since "if the President cannot remove holdover officials . . . then holdover members could conceivably remain in office for substantial, indeed unlimited, periods of time").

[2] Because the Court finds this law sufficient to reject Plaintiff's argument, the Court need not consider Plaintiff's other arguments nor Defendant's defenses.

16

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[3]

New Orleans, Louisiana, this 4th day of _____February_____, 2022.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[3] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.